# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA INTERSTATE CONSTRUCTION, LLC,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>CRUM & FORSTER SPECIALTY INSURANCE COMPANY, INC.,<br><br>　　　　　　　Defendants, | Case No. 3:14-cv-00126-RRB<br><br>**ORDER GRANTING MOTIONS AT DOCKETS 77 AND 81 AND DENYING MOTIONS AT DOCKETS 34 AND 49** |

## I.　INTRODUCTION

Plaintiff Alaska Interstate Construction, LLC ("AIC") filed the present suit against Defendant Crum & Forster Specialty Insurance Company, Inc. ("C&F") as a result of C&F's refusal to provide liability insurance coverage. AIC sought coverage from C&F in response to a lawsuit filed by VC Sellers Reserve ("VC Sellers") in the Superior Court for the State of Alaska ("Underlying Suit"). AIC asserts that its policy from C&F provides coverage for the Underlying Suit and C&F is therefore obligated to both defend and indemnify AIC. C&F has disclaimed any obligation to provide coverage under the suit. For the reasons set forth below, the Court now concludes that C&F has no duty to defend or indemnify AIC.

The parties previously filed cross motions for summary judgment at Dockets 15 and 24, which the Court addressed in its Order on December 23, 2014, at Docket 27. In that Order, the Court granted in part and denied in part both parties' motions for summary judgment. The Court found that C&F has no duty to indemnify AIC as to the first five causes of action in the Underlying Suit relating to the billing actions for multiple burns of the same soil or blending of remediated soil with contaminated soil. However, the Court did find a potential duty to indemnify AIC as to the sixth cause of action, relating to the use of an uncalibrated and uncertified belt scale. Therefore the Court concluded that C&F has a duty to defend AIC in the Underlying Suit in its entirety. With regard to indemnification in the sixth cause of action, the Court found in favor of AIC as to affirmative defenses 1, 2, 3, 5(a), 5(b), 5(c), 5(d), 5(f), 5(j), and 5(k) in part. The Court's Order did not address affirmative defenses 4, 5(e), 5(g), 5(h), 5(i), and 6 as they pertain to the uncertified and uncalibrated belt scale and there appeared to be disputed facts regarding these defenses.

AIC filed a Renewed Motion for Summary Judgment at **Docket 34** seeking a final determination of the coverage issues unaddressed by the Court. C&F opposed the motion and responded with a Motion for Rule 60 Reconsideration and relief from the Court's previous Order, under Fed. R. Civ. Proc. 60(b)(3), at **Docket 49**. C&F alleges that AIC submitted false evidence and misrepresented the policy terms based on the false evidence. Docket 49 at 2. Upon direction from the Court, C&F has also filed a Motion for Summary Judgment Regarding Affirmative Defenses 5(E) and 5(H) at **Docket 77**. C&F also filed a Request for Judicial Notice at **Docket 81**, which the Court now grants.

## II. BACKGROUND

AIC is a company providing engineering and construction-related services throughout Alaska, including heavy civil construction, bridge building, mining-support, oilfield services, and thermal soil remediation. AIC was approached by Restoration Science and Engineering ("RSE") in the spring of 2008 to provide thermal soil remediation services on the North Slope. RSE had been hired by VC Sellers to clean up three areas in Prudhoe Bay, but lacked the equipment and facilities to perform the remediation work. AIC eventually submitted a proposal to RSE on July 7, 2008, outlining its services and pricing, as well as details on its plant operations and operating parameters. The proposal provided that the price for removing the remediated soil from the AIC yard would be based on time and materials, with the material remediated at a price of $99 per ton. The weight and measurement of the material would be determined based on the calibrated belt scale which was attached to the conveyor belt that transported material from the hopper to the tumbler.

RSE accepted the proposal from AIC without modification, and the remediation project began on August 18, 2008. The amount of contaminated ground water in the material was allegedly problematic for AIC, as the "soupy" material had a moisture content that exceeded the operational parameters of AIC's machinery. AIC addressed this problem by reportedly utilizing portions of recently remediated soil to mix in with the contaminated soil, thereby lowering the moisture content of the soil to be remediated. The project was completed on September 19, 2010, but a dispute arose regarding an internal deadline of August 31, 2010, and payment for work after that date. A demand letter was sent by AIC to VC Sellers (through RSE) on November 3, 2011,

requesting payment of the final bill and AIC filed suit against RSE on May 29, 2012. In meetings during the suit, VC Sellers complained about AIC's practice of blending already remediated and contaminated soil, which they alleged led to inflated charges because material was being weighed and billed each time it was put on the conveyor belt. AIC eventually dropped their lawsuit on January 11, 2013. However, VC Sellers responded by filing its own lawsuit on June 14, 2013. In the Underlying Lawsuit VC Sellers alleges that it was overbilled due to AIC charging for multiple burning of the same soil, charged for burning soil blended from clean and contaminated material, utilized an uncertified scale, and used a scale that was uncalibrated.

Shortly after VC Sellers filed suit, AIC tendered a claim to C&F on June 20, 2013. C&F had previously issued AIC policy number EPK 100301, effective from December 1, 2011, to May 1, 2013, and policy number EPK 101290, effective from May 1, 2013 to May 1, 2014. Docket 16-19. These policies included a General Liability Policy ("GL"), a Contractors Pollution Liability Policy ("CPL"), and an Errors and Omissions Policy ("E&O"), of which only the E&O is here in dispute.[1]

C&F denied AIC's claim and disclaimed any liability, indicating that the allegations of VC Sellers were not "wrongful acts" committed in the course of "professional services." C&F also denied coverage because the claim was not reported during the policy period, because certain wrongful acts were committed prior to retroactive coverage, and because AIC knew of and failed to report the wrongful acts prior to renewal of the policy. AIC filed the present suit seeking a determination on the existence of coverage.

---

[1] Docket 16 at 21-22.

ORDER GRANTING MOTIONS AT DOCKETS 77 AND 81
  AND DENYING MOTIONS AT DOCKETS 34 AND 49 - 4
3:14-cv-00126-RRB

## III. STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment avoids unnecessary trials when there is no dispute as to the facts in the matter before the court.[2] The evidence of the nonmoving party is to be believed and all reasonable inferences are drawn in his favor.[3] Summary judgment is appropriate where "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."[4]

"District courts unquestionably possess the power to enter summary judgment sua sponte" where there is prior reasonable notice that allows adequate time to develop the facts on which the opposing party would depend.[5] This includes a "full and fair opportunity to ventilate the issues prior to the district court's summary judgment on the parties' claims."[6]

### B. Insurance Policy Interpretation

When interpreting an insurance policy, Alaska law instructs courts to look to the language of the disputed provision, other provisions in the policy, extrinsic evidence, and case law interpreting similar provisions.[7] Insurance policies are construed in a manner that honors a lay insured's reasonable expectations.[8] Any ambiguity should be construed in favor of the insured and

---

[2] *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted).

[3] *Tolan v. Cotton,* 134 S. Ct. 1861, 1866 (2014) (per curiam) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

[4] *Id.* (*quoting* Fed. R. Civ. P. 56(a)).

[5] *Norse v. City of Santa Cruz*, 629 F.3d 966, 971 (9th Cir. 2010); Fed. Rules Civ. Proc. Rule 56(f).

[6] *Id.* at 973 *quoting Greene v. Solano Cnty. Jail*, 513 F.3d 982, 990 (9th Cir. 2008) (internal quotation marks omitted).

[7] *Allstate Ins. Co. v. Teel*, 100 P.3d 2, 4 (Alaska 2004).

[8] *State Farm Mut. Auto. Ins. Co. v. Dowdy*, 192 P.3d 994, 998 (Alaska 2008).

against the insurer.[9] Also, grants of coverage should be viewed broadly, while exclusions should be viewed narrowly.[10] Nevertheless, where a reasonable lay interpretation of the policy would not encompass coverage under the circumstances, there is no ambiguity and therefore no coverage.[11]

### C. Duties of Insurer

An insurer's duty to defend and its obligation to indemnify are separate and distinct contractual elements, with the duty to defend being broader than the duty to provide coverage.[12] Under Alaska law, an insurer must defend the insured "whenever a complaint states a cause of action within, or potentially within, the policy coverage."[13] The existence of a duty to defend is determined by the factual allegations asserted in the complaint of the underlying litigation.[14] While the duty to defend may also exist where the interpretation of the policy presents an open legal question, this does not mean it arises whenever an insurer and an insured have a dispute over coverage.[15] Where a reasonable lay interpretation of the policy would not encompass coverage under the undisputed facts there is no duty to defend.[16]

### D. Fed. R. Civ. Proc. 60(b)(3)

Federal Rule of Civil Procedure 60(b)(3) gives the Court discretion to grant relief from an order for "fraud (whether previously called intrinsic or extrinsic), misrepresentation or misconduct by an opposing party." In order to prevail on such a motion, the moving party must, among other

---

[9] *Id.*
[10] *State Farm Mut. Auto. Ins. Co. v. Houle*, 269 P.3d 654, 658 (Alaska 2011).
[11] *Makarka ex rel. Makarka v. Great Am. Ins. Co.*, 14 P.3d 964, 969 (Alaska 2000).
[12] *Sauer v. Home Indem. Co.*, 841 P.2d 176, 180 (Alaska 1992).
[13] *Afcan v. Mutual Fire Marine & Inland Ins. Co.*, 595 P.2d 638, 645 (Alaska 1979).
[14] *Id.* at 644; *State, Dep't of Transp. & Pub. Facilities v. State Farm Fire & Cas. Co.*, 939 P.2d 788, 792 (Alaska 1997).
[15] *Makarka*, 14 P.3d at 970.
[16] *Id.* at 969.

things, "prove by clear and convincing evidence that the [judgment] was obtained through fraud, misrepresentation, or other misconduct.'[17]

**E. District of Alaska Civil Local Rule 56.1(b)**

Under District of Alaska Civil Local Rule 56.1(b), after a party has made a motion for summary judgement under Rule 56, any additional motion addressing causes of action or affirmative defenses previously available, but omitted from the earlier motion, are unavailable. The only exception is when leave is given by the court for "good cause shown."

## IV. DISCUSSION

Because the Court declined to address several affirmative defenses in the previous order, which both parties have now thoroughly briefed, the Court does find there to be good cause to allow the renewed motion for summary judgement by AIC under Local Rule 56.1(b). Additionally, C&F has expressed a desire, in the alternative, for leave to file an additional motion for summary judgment based on affirmative defenses 5(e) and 5(h). The Court has power to grant summary judgment sua sponte in this matter if necessary, given the thorough and exhaustive filings from all parties. Having reviewed all the relevant documents, **the Court does now find a sufficient basis for summary judgment in favor of C&F based on affirmative defenses 5(e) and 5(h) and ultimately finds that C&F has no duty to indemnify or defend AIC in the underlying suit. Because this issue has been fully briefed, further briefing or motion practice is not necessary.**

---

[17] *Ockenden v. Josephine County*, 185 F.3d 868 (9th Cir. 1999) *quoting Bunch v. United States*, 680 F.2d 1271, 1283 (9th Cir. 1982) (internal quotations omitted).

### A. Motion for Reconsideration

C&F argues that AIC fraudulently represented in the previous motion for summary judgment the existence of a single policy period in this dispute. C&F maintains that the two distinct policies existed and the "renewal" on May 1, 2013, was in fact a new policy. The dispute between the parties turns on whether the initial policy from December 2011 until May 2013 was an "occurrence based" or a "claims-made" insurance policy.

Regardless, the Court is not persuaded that the Court's Judgment at Docket 27 was obtained by fraud or misrepresentation, particularly since the Court specifically declined to address those affirmative defenses which related to the differing definitions of "the policy period" between the parties. Therefore the Court **DENIES** C&F's Motion for Rule 60 Reconsideration at **Docket 49** from the previous Order. The Court will, however, address the affirmative defenses.

### B. Claims made and reported during same policy period - Affirmative Defense 5(e)

The parties are in agreement "that coverage under the E&O Policy will only exist if a claim is made (i.e. a lawsuit is filed or threatened) and the claim is reported (i.e. tendered) to the insurer during the policy period at issue."[18] Additionally, AIC concedes two important facts. First, that a claim was first made against it on or about January 10, 2013. And second, that this claim was not reported to C&F in any way until June 20, 2013. Moreover, there is no dispute between the parties that there was an initial policy beginning on December 1, 2011, which was expanded to extend until May 1, 2013. Coverage was subsequently renewed with "a new policy period of May 1,

---

[18] Docket 35 at 15.

2013, until May 1, 2014," which was renewed again with "a policy period from May 1, 2014, until May 1, 2015."[19]

The disputed issue in the present matter is the precise meaning of the term "policy period" under the policies. AIC argues that a reasonable interpretation of the policy would be that the "policy period" begins with the inception date and lasts until the final period of the last policy where there has been consecutive renewals.[20] C&F asserts, to the contrary, that the "policy period" is the specific dates of each policy and that each policy is distinct even where a subsequent policy is identical to its predecessor.[21]

The policies in this matter state that for the insurance to apply:

> **(6) The "claim" for "damages" or "cleanup costs" is first made against any insured and reported to [C&F]…during the "policy period" or Extended Reporting Period, if applicable.[22]**

The language of the policies indicate that these are claims-made policies, rather than occurrence based policies. For claims-made policies, "giving notice within the policy period is what actually creates coverage in the first instance."[23]

While an "occurrence based" policy protects the insured from liability for acts committed during the policy period regardless of when claims arise, a "claims-made" policy only protects the insured for claims made against it and reported to the insurer during the policy period.[24] With claims-made policies, the insured "knows in advance that there is an applicable date that cuts off

---

[19] Docket 35 at 7-8.
[20] Docket 35 at 15-16.
[21] Docket 45 at 10-12.
[22] Docket 48, Exhibit A at 85; Docket 48, Exhibit B at 48.
[23] *Oregon Schools Activities Ass'n v. National Union Fire Ins. Co. of Pittsburgh*, 279 Fed. Appx. 494, 495 (9th Cir. 2008).
[24] *Aetna Cas. and Sur. Co., Inc. v. Pintlar Corp.*, 948 F.2d 1507, 1516 (9th Cir. 1991).

claims." This is "a distinct characteristic of such a policy that directly relates to rate setting."[25] As a result, "[t]he insurer is afforded greater certainty in computing premiums, since it does not need to be concerned with the risk of claims filed long after the policy's period has ended, and as a result the insured may benefit from lower premiums."[26]

AIC appears to have taken a gamble by choosing to not report the claim against it to C&F before the policy was renewed. This may have been in hopes that the claim would in fact go away permanently if they dropped their suit against VC Sellers and the unreported claim would not negatively affect AIC's insurance premiums under future renewal policies. Had AIC reported the claim soon after it was made in January 10, 2013, or any time before the explicit policy end date of May 1, 2013, there would be no question of coverage. However, this is not "a somewhat alarming scenario" where AIC has managed to have a claim fall through the gap between two policies through no fault of their own.[27]

AIC undeniably made the decision to delay reporting the claim to C&F during the first policy period dates and benefitted from having no claims reported when it negotiated the terms for the renewal policy. Allowing the "policy period" to span beyond the initial policy to include every subsequent renewal is neither equitable nor a reasonable interpretation. Accordingly, the Court finds that the term "policy period"—for claims to be both made and reported within—refers distinctively to December 1, 2011, to May 1, 2013, for the policy EPK 100301 and May 1, 2013, to May 1, 2014, for policy EPK 101290 and is therefore not enlarged with each renewal.

---

[25] *Checkrite Ltd Inc. v. Illinois Nat'/ Ins. Co.*, 95 F. Supp. 2d 180, 191 (S.D.N.Y. 2000).
[26] *Id.*; *see also GS2 Engineering & Environmental Consultants, Inc. v. Zurich American Ins. Co.*, 956 F. Supp. 2d 686, 693 (D.S.C., 2013).
[27] Cast Steel Products, Inc. v. Admiral Ins. Co., 348 F.3d 1298, 1301–02 (11th Cir.2003).

AIC asserts that even if the policies were viewed as separate policies, the five month delay between notice of the claim and the tender of the claim to C&F under the first policy is the sort of delay that is "generally excusable."[28] Relying on *Tush v. Pharr*, AIC argues that to assert a policy defense based on delay in tendering a claim, an insurer must show actual prejudice.[29] While *Tush* stands for the application of the "notice-prejudice" rule to occurrence based policies, no authority has been proffered that Alaska applies the rule to claims-made policies as well. In fact the application of the "notice-prejudice" rule to a claims-made policy such as this one is doubtful as it would essentially "rewrite the policy, extending the policy's coverage at no cost to the insured."[30] The Court finds that, similar to other states in this circuit, the Alaska Supreme Court would not extend the "notice-prejudice" rule to "claims-made" policies.[31] The delay in reporting is not excusable and therefore there is no need for C&F to demonstrate prejudice.

Because of AIC's failure to meet the policy requirement that the claim be both made and reported during the policy period, there is no possibility of coverage and C&F has no duty to defend or indemnify AIC in the underlying suit.

### C. Knowledge of "wrongful act" prior to the policy period - Affirmative Defense 5(h)

The policies also state that for the insurance to apply:

*(1) Before the "policy period" no insured had knowledge of any "wrongful act" that could reasonably give rise to a "claim" under this Policy.[32]*

---

[28] Docket 67 at 2.
[29] 68 P.3d 1239, 1250 (Alaska 2003).
[30] *Burns v. International Ins. Co.*, 929 F.2d 1422, 1425 (9th Cir. 1991).
[31] *See Oregon Sch. Activities Ass'n*, 279 F. App'x at 495 (Oregon law); *Charles Dunn Co. v. Tudor Ins. Co.*, 308 F. App'x 149, 151 (9th Cir. 2009) (California law); *Westport Ins. Corp. v. Markham Grp. Inc.*, 403 F. App'x 264, 265 (9th Cir. 2010) (Washington law).
[32] Docket 48, Exhibit A at 84; Docket 48, Exhibit B at 47.

AIC admits that as of June 19, 2012, during the first policy period, it was aware of an allegation of a wrongful act that could reasonably give rise to a claim during the second policy period.[33] As discussed previously, AIC's response is again that there is only a single policy in existence and the subsequent policy periods are merely an extension of that initial policy period start date.  For the same reasons outlined above, the Court finds there to be two distinct insurance policies. AIC's admission that they were aware of, and failed to disclose, a wrongful act prior to the inception of the second E&O policy on May 1, 2013, is an express violation of the terms of the policy.  Even if AIC were to assert that the claim was made and reported during the second policy period, when the Underlying Suit was filed and then reported to C&F, there is no coverage because they knew of the wrongful act. Without valid coverage, C&F has no duty to indemnify or defend.

## V. CONCLUSION

For the above reasons, C&F's Motion for Summary Judgment at **Docket 77** is **GRANTED.** Accordingly, C&F's Motion for Reconsideration at **Docket 49** is **DENIED** and AIC's Renewed Motion for Summary Judgment at **Docket 34** is **DENIED**. This matter is therefore **DISMISSED** in its entirety.

**IT IS SO ORDERED** this 17th day of November, 2015.

S/RALPH R. BEISTLINE<br>
UNITED STATES DISTRICT JUDGE

---

[33] Docket 35 at 5.