**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

AUG 22 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ALASKA INTERSTATE CONSTRUCTION, LLC, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> CRUM & FORSTER SPECIALTY INSURANCE COMPANY, INC., <br><br> Defendant-Appellee. | No. 15-35973 <br><br> D.C. No. 3:14-cv-00126-RRB <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, District Judge, Presiding

Argued and Submitted August 15, 2017
Anchorage, Alaska

Before: GRABER, CLIFTON, and M. SMITH, Circuit Judges.

Alaska Interstate Construction, LLC (AIC) brought this action against its insurer, Crum & Forster Specialty Insurance Company, Inc. (C&F), after C&F denied AIC coverage for a claim it brought under its professional errors and omissions (E&O) liability policy. The district court granted summary judgment

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

for C&F, and AIC appeals. We affirm the district court.

C&F issued AIC an initial policy with a policy period of December 1, 2011, to May 1, 2013, and then a renewal policy with a policy period of May 1, 2013, to May 1, 2014. Both were "claims-made" policies; they limited E&O coverage to claims made and reported during the "policy period," which was defined as "the period shown in the Declarations." AIC concedes that a "claim," within the meaning of the policy, was made against it by VC Sellers Reserve, LLC on January 10, 2013, during the initial policy period. AIC further concedes that it did not report the claim until June 19, 2013, during the renewal policy period. The district court held that C&F was entitled to summary judgment because the claim was not made against AIC and reported to C&F during the same policy period, as the policies required.

Following Alaska law, we construe the policies "in such a way as to honor a lay insured's reasonable expectations [of coverage]." *State Farm Mut. Auto. Ins. Co. v. Dowdy*, 192 P.3d 994, 998 (Alaska 2008). "Ambiguities in . . . insurance policies are to be construed most favorably to an insured, but ambiguities only exist when there are two or more reasonable interpretations of particular policy language." *Id.*

AIC argues that the definition of "policy period" as "the period shown in the Declarations" does not narrow "Declarations" to those in one specific policy, and

2

thus "policy period" can reasonably be interpreted as encompassing both the initial and renewal policy periods (i.e., December 1, 2011, to May 1, 2014). Under this interpretation, AIC would have made and reported the claim within the single, continuous policy period.

AIC's proposed interpretation of "policy period" is not reasonable. According to the plain language of the policies, a claim must be made and reported within a single policy period, as stated in the Declarations for a given policy. The parties agree that the claim was made against AIC during the initial policy period and reported to C&F about six months later, during the renewal policy period. An insured cannot reasonably expect coverage under such circumstances.

AIC's citations to distinguishable, non-binding cases are unavailing. *See, e.g., Cast Steel Prods., Inc. v. Admiral Ins. Co.*, 348 F.3d 1298 (11th Cir. 2003); *Helberg v. Nat'l Union Fire Ins. Co.*, 657 N.E.2d 832 (Ohio Ct. App. 1995) (per curiam). While it appears that Alaska has not addressed this issue, "most courts that have confronted [this issue] have concluded that a renewal [of a claims-made policy] does not extend the reporting period for claims made during the earlier policy period." *Checkrite Ltd., Inc. v. Ill. Nat'l Ins. Co.*, 95 F. Supp. 2d 180, 194 (S.D.N.Y. 2000). AIC's cited line of cases represents a minority view that has been criticized. *See, e.g, GS2 Eng'g & Envtl. Consultants, Inc. v. Zurich Am. Ins. Co.*, 956 F. Supp. 2d 686, 693 n.11 (D.S.C. 2013) (finding *Cast Steel*

3

"unpersuasive as it appears to have followed *Helberg* based on a generalized notion of fairness, rather than based on analysis of the language in the policy before the court"). We predict that Alaska would follow the majority position and hold that, unless policy language provides otherwise, renewals of claims-made policies generally do not extend claims reporting periods.

AIC should not be granted an extended reporting period (ERP) after the conclusion of the initial policy period. The policy provided an automatic 90-day ERP for an insured when the policy "is canceled or not renewed by [C&F] for any reason except non-payment of premium." AIC argues that if the policies are viewed separately for purposes of determining the "policy period," then a policy must be viewed as effectively canceled when its policy period ends, making the automatic ERP applicable. However, the plain language of the policy states that cancellation and non-renewal are the events that trigger the ERP. Thus, because AIC renewed its policy, the ERP did not apply.

**AFFIRMED**.